IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| **TaSean Powell,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22cv302 (TSE/JFA) |
| | ) | |
| **Brandon Temple, et al.,** | ) | |
| Defendants.[1] | ) | |

MEMORANDUM OPINION AND ORDER

TaSean Powell, a Virginia inmate proceeding pro se, has filed a civil-rights action under 42 U.S.C. § 1983, alleging that the defendants violated the Prison Rape Elimination Act ("PREA") while he was detained at the Southside Regional Jail in Emporia, Virginia, and he seeks $3,000,000 in damages. [Dkt. No. 1]. Plaintiff has also filed an application to proceed in forma pauperis. [Dkt. No. 7]. Because plaintiff is a prisoner, his complaint will be screened to determine whether it is frivolous, malicious, or fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915A. For the reasons stated below, plaintiff's § 1983 action will be dismissed with prejudice because further amendment would be futile.

### I. Factual Allegations

Powell was detained at the Southside Regional Jail in March 2022,[2] and he alleges that on March 1, 2022, at 6:50 p.m., that defendant Correctional Officer John Dillon violated PREA by telling Powell "to kiss his ass." [Dkt. No. 1 at 5]. Powell informed defendant Officer Johnson that "he felt uncomfortable," but was "afraid" to tell him why because Dillon was the floor

---

[1] Defendant Temple's name is misspelled on the docket sheet. The Clerk will be directed to amend the docket sheet to correct "Tempple" to "Temple."

[2] Plaintiff is presently detained at the Chesterfield County Jail, Chesterfield, Virginia.

officer at that time. [Id.]. Defendant Lt. Robinson met with Powell, but was unable to assist Powell because Powell would not tell him the "who, what, when, and where." [Id.].

After Powell woke up on March 2, 2022, he approached defendant Corporal Walker while she was in the process of searching and removing property form another inmate's cell and told her that he wanted to "report a PREA complaint." [Id. at 6]. Walker ignored Powell's repeated requests, and continued removing items from the cell she had been searching. Powell complained to Walker that she was required to "immediately" take his report, which took "precedent" over her other duties. [Id.]. Walker told Powell to stop talking to her or he would be "sorry," which Powell interpreted as a threat for attempting to report a PREA violation. [Id.].

Other officers (defendants Richard Miles, Rakwan Young, Moore, and Juanita Wright) were also packing up inmate belongings. Powell informed each officer that he wanted "to report a PREA incident." [Id.]. Each officer listened, but did not report Powell's PREA complaint, and defendant Lt. Wright told Powell that Powell's "concern" was not "a PREA offense." Powell responded that "[a]ny unprofessional comment of a sexual, derogatory language falls under sexual harassment," and that Johnson's comment "invited [Powell] to make oral contact with his anus." [Id.].

For the next three or so hours, Powell alleges he did not feel safe and that he was eventually transferred to another housing unit. When Powell asked why he was transferred, he was told he had said he did not feel safe and it was presumed that Powell meant that he had an issue with his cellmate. Powell responded that he did not feel safe because he had told "four to six officers that he had a PREA complaint that was blatantly neglected due to the fact that it was the nephew of the Superintendent[,] Colonel Anthony Johnson." [Id.]. Powell approached another officer, Corporal Chambliss, and told Chambliss he did not feel safe. Powell was

2

subsequently shackled, placed in a restraint belt and moved to the SP Housing Unit pursuant to an order from defendants Major Brandon Temple and Captain Portray Temple. [Id. at 6-7]. At approximately 5:30 p.m., on March 2, 2022, Powell "called" in his PREA complaint. On March 5, 2022, Powell received a written response from Major Temple stating that Powell's complaint was not deemed a PREA complaint. [Id.].

## II. Standard of Review

Pursuant to § 1915A, a court must dismiss claims based upon "'an indisputably meritless legal theory,'" or where the "'factual contentions are clearly baseless.'" Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) (citation omitted).[3] Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp.2d 641, 642 (E.D. Va. 1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

---

[3] Section 1915A provides:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
> >
> > (2) seeks monetary relief from a defendant who is immune from such relief.

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id. at 678, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level…." Twombly, 550 U.S. at 555. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

### III. Discussion

Section 1983 provides a cause of action against persons, who acting under the color of state law, deprive another person of the rights and privileges secured by the Constitution or laws. See 42 U.S.C. § 1983. As the Fourth Circuit has recognized, however, "section 1983 itself creates no rights; rather it provides a method for vindicating federal rights elsewhere conferred." Doe v. Broderick, 225 F.3d 440, 447 (4th Cir. 2000) (internal citations omitted). The Supreme Court has explained that, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002).

Powell's complaint that he was sexually harassed and that his complaint was ignored is predicated on his allegation that the defendants violated the PREA. He harassment was defendant Dillon's vulgar language, which Powell alleges implies sexual contact, and the other defendants

4

for not immediately investigating his complaint.[4] PREA, however, was enacted to address the problem of rape in prison by creating a commission to study the issue and to develop national standards for the detection, prevention, reduction and punishment of prison rape. See 34 U.S.C. §§ 30301 et seq. (previously codified at 42 U.S.C. §§ 15601). Nothing in the statute suggests that PREA was intended to provide a private cause of action for rape, sexual assault, or sexual abuse. To the contrary, in enacting PREA Congress sought "[t]o provide for the analysis of the incidence and effects of prison rape in Federal, State, and local institutions and to provide information, resources, recommendations, and funding to protect individuals from prison rape." 108 P.L. 79, 117 Stat. 972. PREA is designed to reduce incidents of sexual misconduct in our nation's correctional facilities by providing grants and educational initiatives that are intended to enhance education, investigation, protection, prevention, and prosecution of sexual offenses.

In furtherance of its intent, PREA required the Attorney General to publish regulations that provided "national standards for the detection, prevention, reduction, and punishment of prison rape," which were published on June 20, 2012. See 77 Fed. Reg. 37106, 37107. DOJ's PREA regulations established a standard set of definitions; standards for prisons and jails;

---

[4] The PREA regulations promulgated by the U.S. Department of Justice ("DOJ") define "sexual harassment" as follows:

> (1) Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate, detainee, or resident directed toward another; and
>
> (2) Repeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.
>
>> Voyeurism by a staff member, contractor, or volunteer means an invasion of privacy of an inmate, detainee, or resident by staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an inmate's naked body or of an inmate performing bodily functions.

28 C.F.R. § 115.6(8).

lockups; community correction facilities; juvenile facilities; requires audits on a regular basis; and requires state governors to review their most recent audits and certify compliance for state and privately operated facilities. See 28 C.F.R. Part 115.[5]

Moreover, the remedy provided by the PREA regulations is for the government agency to discipline the staff member responsible and the disciplinary sanctions are "up to and including termination for violating agency sexual abuse or sexual harassment policies." 28 C.F.R. § 115.76.[6] "There can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation." Jackson v. Holley, 666 F. App'x 242, 244 (4th Cir. 2016)); see Farmer v. Brennan, 511 U.S. 825, 834 (1994) ("Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." ) (internal quotation marks omitted)). An

---

[5] The stated purposes of PREA are:

> (1) establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States;
>
> (2) make the prevention of prison rape a top priority in each prison system;
>
> (3) develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape;
>
> (4) increase the available data and information on the incidence of prison rape, consequently improving the management and administration of correctional facilities;
>
> (5) standardize the definitions used for collecting data on the incidence of prison rape;
>
> (6) increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape;
>
> (7) protect the Eighth Amendment rights of Federal, State, and local prisoners;
>
> (8) increase the efficiency and effectiveness of Federal expenditures through grant programs such as those dealing with health care; mental health care; disease prevention; crime prevention, investigation, and prosecution; prison construction, maintenance, and operation; race relations; poverty; unemployment; and homelessness; and
>
> (9) reduce the costs that prison rape imposes on interstate commerce.

34 U.S.C. § 30302.

[6] If a state does not submit proof of compliance with PREA, grants provided to the states may be reduced. See 34 U.S.C. § 30307(e)(2) (mandating 5% reduction in grant funds for failure to comply with PREA).

inmate's remedy, however, is to file a § 1983 complaint and allege sufficient facts to state an Eighth Amendment violation.[7]

Consistent with numerous other courts it is correct to conclude that PREA does not provide for a private cause of action because there is no "basis in law for a private cause of action under § 1983 to enforce a PREA violation." Chapman v. Willis, No. 7:12cv389, 2013 U.S. Dist. LEXIS 74694, at *11-12, (W.D. Va. May 28, 2013). The Western District of Virginia observed that although it had not discovered any "appellate decisions addressing this issue, district courts nationwide have found that PREA does not create a private cause of action that can be brought by an individual plaintiff." De'lonta v. Clarke, No. 7:11cv483, 2012 U.S. Dist. LEXIS 128547* 7-8 (W.D. Va. Sept. 11, 2012) (collecting cases), aff'd, 548 F. App'x 938 (4th Cir. 2013) (per curiam).[8] Since the time of that decision, some courts of appeals have weighed in and also held that the PREA does not create a private cause of action under §1983. See Krieg v. Steele, 599 F. App'x 231, 232-33 (5th Cir. 2015) (concluding that PREA does not create a

---

[7] The Eighth Amendment is applicable to the States through the Fourteenth Amendment and prohibits the infliction of "cruel and unusual punishments." Wilson v. Seiter, 501 U.S. 294, 297 (1991). "Punishments implicating the Eighth Amendment are not limited to the sentences actually handed down by the sentencing court but may also include 'deprivations ... suffered [by inmates] during imprisonment.'" Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017) (quoting Wilson, 501 U.S. at 297). The Eighth Amendment requires "that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment,'" and that "its prohibition of 'cruel and unusual punishments,'" requires prison officials to take reasonable precautions to "protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832, 833 (1994). Farmer holds "that a prison official violates the Eighth Amendment only when" the deprivation the inmates alleges is "objectively, 'sufficiently serious,'" and "a prison official's act or omission" results "in the denial of 'the minimal civilized measure of life's necessities." 511 U.S. at 834 (citations omitted); see Hudson v. McMillian, 503 U.S. 1, 8, 21 (1992) (inmate must allege conduct that was objectively "harmful enough" or "sufficiently serious" to reach constitutional dimensions). In the context of a claim alleging "a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. (emphasis added). The Fourth Circuit has held that "[a]lthough prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." Jackson, 666 F. App'x at 244 (quoting Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (internal quotation marks omitted)).

[8] Watson v. Smith, 5:18cv142, 2019 U.S. Dist. LEXIS 56153, *34 (W.D. N.C. Mar. 30, 2019) (dismissing PREA claim as frivolous because "[t]here is no private cause of action for a PREA violation and a prisoner has no constitutional right to a PREA investigation").

7

private cause of action); Williams v. Wetzel, No. 1:17cv79, 2020 U.S. Dist. LEXIS 20105, *46-47 (M.D. Pa. Feb. 6, 2020) (plaintiff cannot "bring a private action to enforce obligations set forth in the PREA" via § 1983 because the statute does not establish "a private right of action."), aff'd, 827 F. App'x 158, 162 (3d Cir. 2020).

To the extent Powell challenges the quality of the investigation into his PREA complaint, the cases also uniformly confirm that he has no freestanding constitutional right to such an investigation under § 1983. Watson, 2019 U.S. Dist. LEXIS 56153, *47 (citing Graw v. Fantasky, 68 F. App'x 378, 383 (3d Cir. 2003)). As the Third Circuit held in Graw, "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." Graw, 68 F. App'x at 383; see also Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002) (holding that there was no constitutional right to an investigation following a violent incident based upon which the plaintiff raised a claim of excessive force); Stringer v. Doe, 503 F. App'x 888, 890-91 (11th Cir. 2013) (finding no substantive due process right to an internal investigation by law enforcement). As one district court has concluded, "a claim based on an inadequate investigation fails to state a constitutional violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person." Miles v. Mitchell, 3:18cvP116, 2018 U.S. Dist. LEXIS 193225,*13 (W.D. Ky. Nov. 9, 2018) (claim that the defendants failed to investigate properly a PREA report was dismissed for failing to state a claim) (citing Diamond v. Charles, 476 U.S. 54, 64-65 (1986)). Thus, to the extent Powell's complaint rests on an alleged failure to investigate his PREA complaint, that claim also fails.

Finally, to the extent Powell's § 1983 claim asserts a constitutional claim based upon the use of foul or vulgar language by a correctional officer, such a claim fails because the

8

Constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Put simply, a guard's verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. Id.; Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989)'(verbal threats causing fear for plaintiff's life not an infringement of a constitutional right).[9] The same holds true for foul language of a sexual nature. Such language is certainly unprofessional but does not state a claim that rises to the level of a constitutional violation. As numerous courts have recognized, "the uttering of slurs or epithets by police officers — while completely inappropriate — is not unconstitutional." Ondo v. City of Cleveland, 795 F.3d 597, 607 n.3 (6th Cir. 2015). As one district court in this District explained, "[v]erbal abuse of inmates by prison officials, without more, does not rise to the level of an Eighth Amendment violation." De'Lonta v. Fulmore, 745 F. Supp. 2d 687, 691 (E.D. Va. 2010).[10] Thus, Powell also cannot rest any claim for relief on the use of foul or sexual language by correctional officers.

Distilled to its essence Powell claims that Dillon's use of the phrase "kiss my ass" violates the PREA. It does not. Nor does it result in a cause of action under the Constitution.

---

[9] See also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."); Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975) (defamation does not implicate any constitutionally protected right); Keyes v. City of Albany, 594 F. Supp. 1147 (N. D. N.Y. 1984)("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."); Bowler v. Braxton, No. 7:03-cv-00652, 2003 U.S. Dist. LEXIS 27212, *3-4 (W.D. Va. Dec. 3, 2003), aff'd, 88 F. App'x. 612 (4th Cir. 2004) (affirming dismissal pursuant to 28 U.S.C. § 1915A(b)).

[10] Johnson v. Garrison, No. CIV 18-152, 2021 U.S. Dist. LEXIS 49130, *8 (E.D. Okla. Mar. 16, 2021) (dismissing complaint in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted), aff'd, 859 F. App'x 863 (10th Cir. 2021); see also Weiss v. City of Santa Rosa Police Dep't, No. 15cv1639, 2018 U.S. Dist. LEXIS 209028, *46 (N.D. Ca. Dec. 11, 2018) (rude comments by a police officer, including some of a sexual nature "may have been unnecessary, unprofessional, and inappropriate, this type of verbal harassment is simply not actionable as a constitutional violation"); Davis v. Seiter, No. Civ. A 96-3316, 1998 U.S. Dist. LEXIS 10965 (D. Kan. June 30, 1998) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979); Randolph v. Roberts, No. 93-3553, 1996 U.S. Dist. LEXIS 12937, 1996 WL 502030 at *4, n. 1 (D. Kan. July 26, 1996).

Moreover, Powell's complaint implies that the phrase "kiss my ass" is an invitation to sexual contact; it is not. It is a colorful and vulgar means of saying "go to hell." Thus, Powell's complaint must be dismissed.

Although generally, district courts should "freely give leave [to amend] when justice so requires." Rule 15(a)(2), Fed. R. Civ. P., courts need not give leave to amend when amendments would be futile. See Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). The factual predicate upon which this civil action rests (vulgar language) does not rise to the level of a constitutional violation. "Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." Jackson, 666 F. App'x at 244; Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials without more, do not state a cognizable claim under § 1983.").[11]

"Mere allegations of verbal abuse do not present actionable claims under § 1983. 'As a rule, "mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation."'" Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (stating that allegations of verbal abuse as well as threatening language and gestures on the part of a correctional officer do not rise to the level of a constitutional violation) (citations omitted); Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (noting that taunts, even those that are "distressing" do not violate a prisoner's constitutional rights under the Eighth Amendment); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) (noting that the use of derogatory language

---

[11] In Jackson, the offensive conduct was — sending the inmate a "'sexually explicit and lurid;'" posing "seductively before [the inmate] and whisper[ing] sexually explicit words to [him;]" and the guard "plant[ed] her groin area in [the inmate's] face while [he] was seated for [his] haircut in the barber's chair.'" 666 F. App'x at 244. The Fourth Circuit concluded that the offensive conduct about which the inmate complained did "not amount to an Eighth Amendment violation." Id. (citing Wilkins v. Gaddy, 559 U.S. 34, 38-39 (2010)) (footnote omitted).

"while unprofessional and deplorable, does not violate the Constitution"). Here, the detailed compliant does not allege that Powell was ever touched, and, at best, the defendants conduct was no more than "mere verbal sexual harassment." Jackson, 666 F. App'x at 244.

For all the foregoing reasons, Powell's complaint will be dismissed pursuant to § 1915A because he cannot state a claim upon which relief can be granted.

Accordingly, it is hereby

ORDERED that this civil action be and is DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

ORDERED that plaintiff's application to proceed in forma pauperis [Dkt. No. 7] be and is DENIED as MOOT; and it is further

ORDERED that the Clerk amend the docket to correct the spelling of defendant Brandon Tempple's last name to "Temple;" and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(g),[12] this dismissal may affect plaintiff's ability to proceed in forma pauperis in future civil actions; and it is further

ORDERED that the Clerk record this dismissal for purposes of the Prison Litigation Reform Act.

To appeal this decision, plaintiff must file a Notice of Appeal ("NOA") with the Clerk's Office within thirty (30) days of the date of this Order, including in the NOA the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the appellate court. Failure to file a timely NOA waives the right to appeal this Order.

---

[12] 28 U.S.C. § 1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

11

The Clerk is directed to enter judgment in favor of defendants pursuant to Federal Rule of Civil Procedure 58, to send copies of the judgment and this Order to plaintiff, and to close this civil action.

Entered this 27th day of June, 2022.

Alexandria, Virginia

_____
The Honorable T.S. Ellis, III
Senior United States District Judge